No. 11-2408

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

---

BUDDY BELL,

*Plaintiff-Appellant,*

v.

CHICAGO POLICE DEPUTY CHIEF JAMES KEATING, CHICAGO POLICE
OFFICERS CARLOS MOTA, PATRICK MURRAY, and THE CITY OF CHICAGO,

*Defendants-Appellees.*

---

On Appeal From The United States District Court
For The Northern District of Illinois, Eastern Division
No. 09 CV 754 (Hon. John W. Darrah)

---

**BRIEF AND CIRCUIT RULE 30(a) APPENDIX
OF APPELLANT**

---

Arthur Loevy
Jon Loevy
Elizabeth Wang - Counsel of Record
LOEVY & LOEVY
312 N. May St., Ste. 100
Chicago, Illinois 60607
312.243.5900
*Attorneys for Plaintiff-Appellant*

October 7, 2011

---

## CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Pursuant to Circuit Rule 26.1, counsel for Plaintiff-Appellant Buddy Bell states as follows:

1.　　The full name of every party that the undersigned attorneys represented in this case is: Buddy Bell.

2.　　The names of all law firms and the partners and associates that appeared for the party now represented by us in the trial court or are expected to appear in this Court are:　Arthur Loevy
Jon Loevy
Elizabeth Wang
LOEVY & LOEVY
312 N. May St., Ste. 100
Chicago, IL 60607

Melinda Power
Sandeep Basran
West Town Law Office
2502 W. Division Ave.
Chicago, IL 60622

3.　　The parent corporations and any publicly held companies that own ten percent or more of the stock of the party represented by the attorneys: N/A.

Respectfully Submitted,

/s/ Elizabeth Wang
Counsel for Plaintiff-Appellant

Arthur Loevy
Jon Loevy
Elizabeth Wang
LOEVY & LOEVY
312 N. May St., Ste. 100
Chicago, Illinois 60607

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................... iii

STATEMENT CONCERNING ORAL ARGUMENT .................................................. 1

JURISDICTIONAL STATEMENT ........................................................................... 2

ISSUES PRESENTED ............................................................................................. 4

STATEMENT OF THE CASE ................................................................................... 5

STATEMENT OF FACTS ........................................................................................ 7

SUMMARY OF ARGUMENT ................................................................................. 10

ARGUMENT .......................................................................................................... 12

           Standard of Review ...................................................................................... 12

I.      PLAINTIFF BUDDY BELL HAS STANDING TO SEEK
        INJUNCTIVE RELIEF ................................................................................. 12

       A.     Plaintiff Buddy Bell Has Standing Based On His
            January 7, 2008 Arrest ...................................................................... 15

       B.     Plaintiff Buddy Bell Has Standing Based On His
            Reasonable Fear Of Prosecution ...................................................... 16

       C.     The Threat Of Prosecution Is Credible Since Subsection (d)
            Is Vague And Ambiguous ................................................................. 22

II.     SUBSECTION (D) IS UNCONSTITUTIONALLY VAGUE ............................ 24

       A.     Subsection (d) Encourages Arbitrary and Discriminatory
            Enforcement ...................................................................................... 24

       B.     Subsection (d) Does Not Provide Fair Notice ................................. 29

III.    SUBSECTION (D) IS OVERBROAD AND FACIALLY
        UNCONSTITUTIONAL UNDER THE FIRST AMENDMENT ...................... 32

       A.     Subsection (d) Is Overbroad ............................................................ 32

B.    The City Has Not Met Its Burden Of Showing That Subsection (d) Passes Intermediate Scrutiny ..................................................................35

    1.    Subsection (d) is not narrowly tailored .........................................36

    2.    Subsection (d) does not provide ample alternative channels of communication ........................................39

C.    Subsection (d) Permits A Heckler's Veto ..................................................41

CONCLUSION ..........................................................................................................43

# TABLE OF AUTHORITIES

## CASES

*Arreola v. Godinez*, 546 F.3d 788 (7th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . 12

*American Civil Liberties Union v. The Florida Bar*,
999 F.2d 1486 (11th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Babbitt v. UFW Nat'l Union*, 442 U.S. 289 (1979) . . . . . . . . . . . . . . . . . . . . . passim

*Berg v. Health and Hosp. Corp. of Marion County, Ind.*,
865 F.2d 797 (7th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36, 38

*Boos v. Barry*, 485 U.S. 312 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Broadrick v. Oklahoma*, 413 U.S. 601 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Cantwell v. Connecticut*, 310 U.S. 296 (1940) . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 28

*City of Chicago v. Fort*, 262 N.E.2d 473 (Ill. 1970) . . . . . . . . . . . . . . . . . . . . . . 26, 28

*City of Chicago v. Mateja*, 372 N.E.2d 1060 (Ill. App. Ct. 1978) . . . . . . . . . . . 26, 37

*City of Chicago v. Morales*, 527 U.S. 41 (1999) . . . . . . . . . . . . . . . . . . . . . . . . passim

*Coates v. Cincinnati*, 402 U.S. 611 (1971) . . . . . . . . . . . . . . . . . . . . . . . . 25, 26, 29

*Colten v. Kentucky*, 407 U.S. 104 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30, 31

*Commodity Trend Serv., Inc. v. Commodity Futures Trading Commission*,
149 F.3d 679 (7th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 18

*Cox v. Louisiana*, 379 U.S. 536 (1965) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 28

*Doe v. Bolton*, 410 U.S. 179 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Edwards v. South Carolina*, 372 U.S. 229 (1963) . . . . . . . . . . . . . . . . . . . . . . . 27, 41

*Ezell v. City of Chicago*, __ F.3d __ No. 10-3525,
2011 WL 2623511 (7th Cir. July 6, 2011) . . . . . . . . . . . . . . . . . . . . . . . 8, 17, 40

*Forsyth Co. v. Nationalist Movement*, 505 U.S. 123 (1992) . . . . . . . . . . . . . . . . . . 42

*Gooding v. Wilson*, 405 U.S. 518 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 38

*Grayned v. City of Rockford,* 408 U.S. 104 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Hallandale Professional Fire Fighters Local 2238 v. City of Hallandale*,
    922 F.2d 756, 762 (11th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Harrell v. Florida Bar*, 608 F.3d 1241 (11th Cir. 2010) . . . . . . . . . . . . . . . . . . . 20, 22

*Hedges v. Wauconda Cmty. Unit Sch. Dist. No. 118*,
    9 F.3d 1295 (7th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

*Heffron v. Int'l Soc'y for Krishna Consciousness, Inc.*,
    452 U.S. 640 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Hodgkins by Hodgkins v. Peterson*, 355 F.3d 1048 (7th Cir. 2004) . . . . . . . . passim

*Holder v. Humanitarian Law Project*, 130 S. Ct. 2705 (2010) . . . . . . . . . . . . . 18, 25

*Hoover v. Wagner*, 47 F.3d 845 (7th Cir. 1995) . . . . . . . . . . . . . . . . . . 12, 13, 22, 23

*Horina v. Granite City*, 538 F.3d 624 (7th Cir. 2008) . . . . . . . . . . . . . . . . . . . 36, 39

*Houston v. Hill*, 482 U.S. 451 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*Int'l Soc'y for Krishna Consciousness of Atlanta v. Eaves*,
    601 F.2d 809 (5th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Island Ass'n of Realtors, Inc. v. Whitehouse*,
    199 F.3d 26 (1st Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Kennedy v. City of Villa Hills, Ky.*, 635 F.3d 210 (6th Cir. 2011) . . . . . . . . . . . . . 38

*Kolender v. Lawson*, 461 U.S. 352 (1983) . . . . . . . . . . . . . . . . . . . . . . . . 10, 24, 39

*Krantz v. City of Fort Smith*, 160 F.3d 1214 (8th Cir. 1998) . . . . . . . . . . . . . . . . . 19

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) . . . . . . . . . . . . . . . . . . . . . . . 12

*Lyttle v. Killackey*, 546 F. Supp. 2d 583 (N.D. Ill. 2008) . . . . . . . . . . . . . . . . . . . 20

*Mainstreet Org. of Realtors v. Calumet City*,
 505 F.3d 742 (7th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Majors v. Abell*, 317 F.3d 719 (7th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . 14, 15, 17

*Members of the City Council of the City of Los Angeles v.*
 *Taxpayers for Vincent*, 466 U.S. 789 (1984) . . . . . . . . . . . . . . . . . . . . . . . 32, 35

*Monell v. Dep't of Social Services*, 436 U.S. 658 (1978) . . . . . . . . . . . . . . . . . . . 2

*New Hampshire Right to Life Political Action Comm. v. Gardner*,
 99 F.3d 8 (1st Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*New Mexicans for Bill Richardson v. Gonzales*,
 64 F.3d 1495 (10th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Penny Saver Publications v. Village of Hazel Crest*,
 905 F.2d 150 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Pindak v. Dart*, No. 10 CV 6237, 2001 WL 4337017
 (N.D. Ill. Sept. 14, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Reno v. American Civil Liberties Union*, 521 U.S. 844 (1997) . . . . . . . . . . . . . . . 33

*Schad v. Borough of Mount Ephraim*, 452 U.S. 61 (1981) . . . . . . . . . . . . . . . . . . 39

*Schirmer v. Nagode* 621 F.3d 581 (7th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . passim

*Schneider v. State*, 308 U.S. 147 (1939) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38, 40

*Sec'y State of Md. v. Joseph H. Munson, Co.*, 467 U.S. 947 (1984) . . . . . . . . . . 14, 32

*Sequoia Books, Inc. v. Ingemunson*, 901 F.2d 630 (7th Cir. 1990) . . . . . . . . . 15, 18

*Shuttlesworth v. Birmingham*, 382 U.S. 87 (1965) . . . . . . . . . . . . . . . . . . . . . . 29, 32

*Smith v. Goguen*, 415 U.S. 566 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Sroga v. Weiglen*, 649 F.3d 604 (7th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Startzell v. City of Philadelphia*, 533 F.3d 183 (3d Cir. 2008) . . . . . . . . . . . . . . . . 28

*Steffel v. Thompson*, 415 U.S. 452 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Teesdale v. City of Chicago,* __ F. Supp. 2d __, No. 09 CV 4046
   2011 WL 2143027 (N.D. Ill. May 26, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Terminiello v. Chicago*, 337 U.S. 1 (1949) . . . . . . . . . . . . . . . . . . . . . . . 27, 28, 38, 41

*Thayer v. Chiczewski*, No. 07 CV 1290, 2007 WL 3447931
   (N.D. Ill. Nov. 13, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Thomas v. Chicago Park Dist.*, 227 F.3d 921 (7th Cir. 2000) . . . . . . . . . . . . . . . . 33

*Thomas v. Anchorage Equal Rights Commission,*
   200 F.3d 1134 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Thornhill v. Alabama*, 310 U.S. 88 (1940) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*United Food and Commercial Workers Int'l Union v. IBP, Inc.,*
   857 F.2d 422 (8th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. Dellinger*, 472 F.2d 340 (7th Cir. 1972) . . . . . . . . . . . . . . . . . . . 33

*United States v. Moore*, 644 F.3d 553 (7th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Williams*, 553 U.S. 285 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Village of Schaumburg v. Citizens for a Better Environment,*
   444 U.S. 620 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383 (1988) . . . . . . . . . . . . . 13, 18

*Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer
   Council, Inc.*, 425 U.S. 748 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 40

*Waldron v. McAtee*, 723 F.2d 1348 (7th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . 33

*Weinberg v. City of Chicago*, 310 F.3d 1029 (7th Cir. 2002) . . . . . . . . . . . 36, 39, 40

*Wiegand v. Seaver*, 504 F.2d 303 (5th Cir. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Wilson v. Stocker*, 819 F.2d 943 (10th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Winkler v. Gates*, 481 F.3d 977 (7th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Wisconsin Action Coalition v. City of Kenosha*,
    767 F.2d 1248 (7th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . 35, 36, 37, 39

## STATUTES

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

28 U.S.C. § 1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

28 U.S.C. § 1367(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 6

720 ILCS 5/26-1(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

720 ILCS 5/31-1(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Chicago Municipal Code § 8-4-010(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Chicago Municipal Code § 2-60-020(a)-(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

## STATEMENT CONCERNING ORAL ARGUMENT

This appeal challenges the district court's holding that Buddy Bell lacks standing to pursue prospective injunctive relief on his facial challenge to the City of Chicago's disorderly conduct ordinance, even though Bell was arrested and prosecuted under the ordinance and a jury found that the ordinance was properly applied to him.

The district court's holding is unsupportable under controlling precedent. Not only should the district court's decision be reversed, but this Court should consider Bell's arguments that the City's disorderly conduct ordinance is facially unconstitutional under the First Amendment and void for vagueness under the Due Process Clause of the Fourteenth Amendment.

Oral argument is warranted because these are significant issues of first impression.

## JURISDICTIONAL STATEMENT

On February 5, 2009, Plaintiff Buddy Bell filed a complaint pursuant to 42 U.S.C. § 1983 against Chicago Police Deputy Chief James Keating, Officer Carlos Mota, Officer Patrick Murray, and the City of Chicago, asserting claims for violations of his First, Fourth, and Fourteenth Amendment rights, and malicious prosecution and indemnification under Illinois law. R. 1.[1] The district court had jurisdiction over the federal claims under 28 U.S.C. § 1331 and supplemental jurisdiction over the state-law claims under 28 U.S.C. § 1367(a).

Bell voluntarily dismissed Count V of his complaint, which sought damages against the City of Chicago. *See Monell v. Dep't of Social Services*, 436 U.S. 658 (1978); R. 18. At the final pretrial conference on December 2, 2010, Bell also voluntarily dismissed Count III, which alleged a claim for damages against the Defendant Officers for First Amendment retaliation.[2]

On December 7-9, 2010, Bell's Fourth Amendment false arrest (Count I) and state law malicious prosecution (Count VI) claims were tried before a jury. R. 80-81, 90. On December 9, 2010, the district court entered judgment on the jury verdict in favor of Defendants on those counts.[3] R. 91-92 (A5-9). The court reserved ruling on Counts II and IV of the Complaint, which allege that Chicago Municipal Code § 8-4-010(d) ("Subsection (d)"), under which Bell was arrested and prosecuted, is facially

---

[1] "R. __" refers to the district court docket. "A__" refers to the appendix.
[2] The final pretrial conference was not transcribed.
[3] Plaintiff also alleged a claim for indemnification under state law, but that was necessarily resolved when the jury found against him on his malicious prosecution claim. *See* R. 1 at ¶¶ 42-44.

unconstitutional under the First Amendment and void for vagueness under the Due Process Clause of the Fourteenth Amendment. *See* A2; R. 1.

On February 21, 2011, Bell moved for a declaration and permanent injunction barring enforcement of Subsection (d) pursuant to Counts II and IV of his complaint. R. 114. On June 2, 2011, the district court denied Bell's motion and dismissed those counts. R. 123-24 (A1-4). The district court's order of June 2, 2011 resolved all remaining claims against all parties, resulting in a final judgment.

Bell filed a timely notice of appeal on June 22, 2011, seeking reversal of the district court's order of June 2, 2011. R. 129. This Court has jurisdiction over this appeal under 28 U.S.C. § 1291.

## ISSUES PRESENTED

1.     Whether Plaintiff Buddy Bell has standing to seek injunctive and declaratory relief on his facial challenge to Subsection (d) on First and Fourteenth Amendment grounds, when a jury found that there was probable cause for his arrest under the ordinance.

2.     Whether Subsection (d) is void for vagueness in violation of the Due Process Clause of the Fourteenth Amendment.

3.     Whether Subsection (d) is overbroad and creates an impermissible risk of suppression of ideas; is not narrowly tailored to serve a significant governmental interest; fails to provide ample alternative channels of communication; and creates a heckler's veto in violation of the First Amendment.

## STATEMENT OF THE CASE

Plaintiff Buddy Bell is an activist who was arrested by Defendant Chicago police officers for disorderly conduct under Subsection (d) during a protest of the war in Iraq and former President Bush's visit to Chicago on January 7, 2008. R. 1. Bell alleged that he was falsely arrested and maliciously prosecuted. *Id.* At his trial on these claims in the district court, the jury rejected his false arrest and malicious prosecution claims, finding that there was probable cause to arrest him under Subsection (d). *See* A5, 7 (Jury Verdict). Bell does not challenge this finding on appeal.

Bell then sought declaratory and injunctive relief on his First and Fourteenth Amendment claims that Subsection (d) is facially unconstitutional because it is overbroad, not narrowly tailored to serve a legitimate governmental interest, fails to provide ample alternative channels of communication, and is void for vagueness. R. 1. The district court dismissed these claims and denied relief on the ground that Bell lacked standing to challenge the facial validity of Subsection (d). A4. In so doing, the district court ignored the fact that Bell had been arrested and prosecuted under Subsection (d) and a jury found that the ordinance was validly applied to him. The district court held that "Bell has not established that he has a sufficient fear of being arrested for violating" Subsection (d). *Id.* The district court based its three-page decision on *Schirmer v. Nagode*, 621 F.3d 581 (7th Cir. 2010), asserting that "[t]he circumstances of this case are not distinguishable," A4, even though,

unlike *Schirmer,* facts in this record establish that Subsection (d) was validly applied to Bell.

## STATEMENT OF FACTS

On January 7, 2008, President George W. Bush visited downtown Chicago. *See* R. 1 ¶ 10. In an expression of protest of the President's visit and of the war in Iraq, Bell stood at the corner of Dearborn and Jackson in downtown Chicago holding a pole connected to a banner that said, "End the war and occupation TROOPS HOME NOW." *Id.*; R. 114 at 1; *see also* Dkt. No. 1 ¶ 6, *Thayer v. Keating*, No. 10 CV 2806 (N.D. Illinois). Bell held this banner before, during, and after former President Bush's motorcade passed the corner of Dearborn and Jackson. R. 114 at 1.

While Bell stood on the sidewalk with his banner, Defendant Chicago Police Deputy Chief James Keating ordered him (and the other protestors holding the banner) to disperse. R. 1 ¶ 11. When Bell did not disperse, Keating directed Defendant Chicago Police Officers Mota and Murray to arrest him under Subsection (d) of the City's disorderly conduct ordinance, § 8-4-010. *Id.* ¶ 12. Bell was arrested and prosecuted under Subsection (d), which provides:

> A person commits disorderly conduct when he knowingly … Fails to obey a lawful order of dispersal by a person known by him to be a peace officer under circumstances where three or more persons are committing acts of disorderly conduct in the immediate vicinity, which acts are likely to cause substantial harm or serious inconvenience, annoyance or alarm[.]

Chicago Munic. Code § 8-4-010(d); R. 1 ¶ 13.

In addition to returning a verdict in favor of Defendants, *see* A5-8, the jury also answered three special interrogatories, A7. First, the jury was asked, "Did Deputy Chief Keating and Officers Murray and Mota have probable cause to arrest

Plaintiff Buddy Bell for disorderly conduct under an ordinance of the City of Chicago?" *Id.* The jury answered, "Yes." The only ordinance on which the jury was instructed was Subsection (d). *See* R. 88 at 23 (Defendants' Proposed Instruction No. 12). Second, the jury was asked, "Did Deputy Chief Keating and Officers Murray and Mota have probable cause to arrest Plaintiff Buddy Bell for disorderly conduct under Illinois law?" A7. The jury answered, "No." *Id.* Third, the jury was asked, "Did Deputy Chief Keating and Officers Murray and Mota have probable cause to arrest Plaintiff Buddy Bell for obstructing a peace officer under Illinois law?" A7. The jury also answered, "No." *Id.* The jury had been instructed on the meaning of disorderly conduct and obstruction under Illinois law. R. 88 at 24-25 (Defendants' Proposed Instruction Nos. 18-19, reciting elements of 720 ILCS 5/26-1(a)(1) and 5/31-1(a)).[4]

Plaintiff Buddy Bell is an activist "who is motivated by many social justice issues, including stopping the wars in Iraq and Afghanistan … ." A10 at ¶ 4 (Affidavit of Buddy Bell). He "feel[s] that one way to effect change in this country and in the city of Chicago is to publicly demonstrate [his] opposition to policies or practices with which [he] disagree[s]." *Id.* As a result of his arrest on January 7, 2008, as well as the arrests of numerous other protestors over the last several years

---

[4] Plaintiff does not present here all the facts brought forth in the jury trial because, as this Court recently held, "[i]n a facial constitutional challenge, individual application facts do not matter. Once standing is established, the plaintiff's personal situation becomes irrelevant. … [i]n a facial challenge like this one, the claimed constitutional violation inheres in the terms of the statue, not its application." *Ezell v. City of Chicago*, __ F.3d__, No. 10-3525, 2011 WL 2623511, at *10 (7th Cir. July 6, 2011). Thus, Plaintiff sets forth the facts necessary to establish his standing to seek injunctive relief on his facial challenge, which is the only claim presented on appeal.

by the Chicago police under Subsection (d), he fears that the Chicago police will arrest and prosecute him again under the ordinance. A10 ¶¶ 3, 5-7. Due to this legitimate fear of arrest and prosecution, Bell has refrained from exercising his First Amendment rights of speech and assembly, which he would otherwise exercise through participation in protests and demonstrations in downtown Chicago. *See id.*

## SUMMARY OF ARGUMENT

The district court's decision that Plaintiff Buddy Bell lacks standing to seek prospective injunctive relief on his facial challenge to Chicago Municipal Code § 8-4-010(d) is wrong as a matter of law. Bell has standing because he was arrested and prosecuted under Subsection (d) for his protest activities on January 7, 2008 and a jury found that the ordinance was validly applied to him. Bell also has standing because his speech has been chilled; his intended future conduct is covered by Subsection (d); the City has vigorously defended its enforcement of the law against him and never disavowed its intention to enforce the law in general or against his intended future conduct; and Subsection (d)'s vagueness chills Bell's speech and presents at least some danger that he will be prosecuted. Thus, this Court should reverse the district court's decision and address the constitutionality of Subsection (d) under the First and Fourteenth Amendments.

Like the Chicago gang loitering ordinance struck down by the Supreme Court in *City of Chicago v. Morales*, 527 U.S. 41 (1999), Subsection (d) is unconstitutionally vague in violation of the Due Process Clause of the Fourteenth Amendment because it fails to provide adequate notice to citizens of what conduct is prohibited and to provide minimal guidelines to govern law enforcement. *See Kolender v. Lawson*, 461 U.S. 352 (1983). Not only are Subsection (d)'s key terms irreducibly vague and subjective, but Illinois courts have not construed the ordinance in a manner that sufficiently places it within constitutional bounds.

10

Moreover, Subsection (d) creates an unacceptable risk of suppression of ideas, in violation of the First Amendment, because it is not narrowly tailored to serve the City's asserted interest in public safety, and it fails to provide ample alternative channels of communication. Subsection (d) also violates the First Amendment because it permits a heckler's veto: it allows the actions of three or more persons unconnected to a speaker to disrupt that speaker and cause his arrest. Finally, Subsection (d) is overbroad because it regulates conduct firmly associated with speech and substantially burdens more speech than necessary to achieve the City's interest in public safety.

Because Subsection (d) is facially unconstitutional under the First Amendment and void for vagueness under the Fourteenth Amendment, this Court should grant Bell declaratory relief and remand to the district court with instructions to enter a permanent injunction against enforcement of the ordinance.

# ARGUMENT

## Standard of Review

Whether a party has standing is a question of law that this Court reviews *de novo*. *Winkler v. Gates*, 481 F.3d 977, 982 (7th Cir. 2007). Any factual findings that entered into the district court's decision are reviewed for clear error. *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008). The constitutionality of a statute is a question of law that this Court reviews *de novo*. *United States v. Moore*, 644 F.3d 553, 554 (7th Cir. 2011).

## I.  PLAINTIFF BUDDY BELL HAS STANDING TO SEEK INJUNCTIVE RELIEF

Article III standing requires "injury in fact, a causal connection between the injury and the defendant's conduct, and likely redressability through a favorable decision." *Winkler*, 481 F.3d at 979 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). "All that a plaintiff need show to establish standing to sue is a reasonable probability—not a certainty—of suffering tangible harm unless he obtains the relief that he is seeking in the suit. Arrest, prosecution, and conviction are tangible harms, and so is abandoning one's constitutional right of free speech in order to avert those harms." *Hoover v. Wagner*, 47 F.3d 845, 847 (7th Cir. 1995) (internal citations omitted); *see also Mainstreet Org. of Realtors v. Calumet City*, 505 F.3d 742, 744 (7th Cir. 2007) ("standing in the Article III sense" requires only "some nonnegligible, nontheoretical, probability of harm that the plaintiff's suit if successful would redress.").

Bell has standing to seek injunctive relief on his facial challenge to Subsection (d) based on his January 7, 2008 arrest. *Schirmer* held that a plaintiff who can show arguable probable cause for a past arrest under Subsection (d) has standing to seek prospective injunctive relief on a facial challenge to the law. 621 F.3d at 587. No one disputes that Subsection (d) was validly applied to Bell on January 7, 2008.

Moreover, Bell also has standing based on his reasonable fear of future prosecution. This reasonable fear has chilled and will continue to chill Bell's exercise of constitutionally protected speech. A10. Bell is refraining from participating in protest activities in which he would otherwise participate because of his past arrest and his fear of future arrest under Subsection (d). *Id.* The chilling of Bell's speech is a concrete, continuing injury that is likely to be redressed by an injunction against the enforcement of Subsection (d). *See Steffel v. Thompson*, 415 U.S. 452, 459 (1974) ("it is not necessary that petitioner first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights"); *see also Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 393 (1988) (self-censorship is "a harm that can be realized without an actual prosecution"); *Hoover*, 47 F.3d at 847; *Wilson v. Stocker*, 819 F.2d 943, 946 (10th Cir. 1987) (plaintiff had standing where he was arrested for violating the statute that he challenged and "presented sworn testimony that he wishes to continue the conduct that precipitated his arrest, but has not done so for fear of rearrest.").

13

Moreover, plaintiffs who bring an overbreadth challenge (as Bell does here) are "permitted to challenge a statute not because their own rights of free expression are violated but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973); *see also Sec'y State of Md. v. Joseph H. Munson, Co.*, 467 U.S. 947, 956-57 (1984). Not only does Subsection (d) chill Bell's speech, but its very existence chills the speech of other would-be protestors.

*Schirmer v. Nagode*, 621 F.3d 581 (7th Cir. 2010), on which the district court based its decision, supports Bell's position. *Schirmer* explains that there are two types of plaintiffs who have standing to seek injunctive relief based on a facial First Amendment challenge to a criminal law. First, a person who is arrested under the law has standing when there was arguable probable cause for the arrest: "If we had any indication that the police were even arguably acting within the scope of the failure-to-disperse provision when they arrested plaintiffs, then these plaintiffs could have standing to challenge the facial constitutionality of that provision and to request injunctive relief." *Id.* at 587. Second, "when an ambiguous statute arguably prohibits certain protected speech, a reasonable fear of prosecution can provide standing for a First Amendment challenge" prior to enforcement of the law against a plaintiff. *Id.* at 586. As discussed below, Bell has standing based on both his past arrest and his reasonable fear of future prosecution.

14

A.    **Plaintiff Buddy Bell Has Standing Based On His January 7, 2008 Arrest**

Bell has standing based on his 2008 arrest because the police were undisputedly "acting within the scope" of Subsection (d) in arresting him: a jury found that there was probable cause to arrest Bell under Subsection (d). A7. The jury found there was probable cause to arrest Bell under "an ordinance of the City of Chicago," *id.*, and Subsection (d) was the only ordinance on which the jury was instructed. R. 88 at 23 (Defendants' Proposed Instruction No. 12). Thus, Subsection (d) was not misapplied to Bell (as it was to the *Schirmer* plaintiffs); it was validly applied to him, and he has standing to seek injunctive relief on that basis. The district court's holding otherwise ignored *Schirmer*'s clear instruction that plaintiffs have standing to seek injunctive relief on the basis of a past arrest where there was arguable probable cause for that arrest.[5] *See Schirmer*, 621 F.3d at 587; *see also United Food and Commercial Workers Int'l Union v. IBP, Inc.*, 857 F.2d 422, 427 (8th Cir. 1988) (picketers had reason to fear arrest based on past arrests of other picketers; "such past experience is relevant to determining the existence of a present threatened injury.").

The circumstances of the *Schirmer* plaintiffs are entirely distinguishable from the circumstances at issue here. The *Schirmer* plaintiffs, who were arrested

---

[5] In *Thayer v. Chiczewski*, a case in which this Court heard oral argument in April 2011, the City argued that plaintiff Bradford Lyttle had standing to seek injunctive relief on his facial challenge to Subsection (d) because there was probable cause to arrest him. Br. of Defendants-Appellees at 36 n.9 (Dkt. No. 36, Appeal Nos. 10-1974, 10-2064, consolidated, decision pending).

under Subsection (d) for protesting near a military recruiting booth at the Taste of

Chicago in 2006, could not establish standing because:

> When the[] plaintiffs were arrested, … they were not even arguably violating
> the failure-to-disperse provision. … There is no evidence in this record, …
> that plaintiffs or any other people in the immediate vicinity were engaged in
> conduct recognizable as 'disorderly conduct' under the ordinance.

*Id.* at 583. The only facts in the *Schirmer* record were those alleged in the

complaint, which simply stated that there was no probable cause to arrest plaintiffs

under Subsection (d). Although the *Schirmer* plaintiffs were arrested and

prosecuted under Subsection (d), the charges against them were ultimately

dismissed, and their false arrest claim against the defendants was settled and never

adjudicated. *Id.* at 584. The *Schirmer* record suggested that the defendant officers

misapplied Subsection (d) in arresting them, *see id.* at 583-84, and this Court held

that plaintiffs "do not have standing to challenge the facial validity of the law that

was misapplied to them," *id.* at 583. Here, the jury found that Subsection (d) was

validly applied to Bell.

### B.    Plaintiff Buddy Bell Has Standing Based On His Reasonable Fear Of Prosecution

Separate and apart from his past arrest for disorderly conduct under

Subsection (d), Bell has a reasonable fear of future prosecution that has a profound

chilling effect on his speech. A10 ¶ 3 ("I now am concerned that if I demonstrate in

public places in downtown Chicago, I may get arrested again…), ¶¶ 4-5. "[W]hen an

ambiguous statute arguably prohibits certain protected speech, a reasonable fear of

prosecution can provide standing for a First Amendment challenge." *Schirmer*, 621

F.3d at 586. This provides an independent basis for standing under *Babbitt v. UFW Nat'l Union*, 442 U.S. 289 (1979):

> When the plaintiff has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by statute, and there exists a credible threat of prosecution thereunder, he "should not be required to await and undergo a criminal prosecution as the sole means of seeking relief."

*Id.* at 298 (quoting *Doe v. Bolton*, 410 U.S. 179, 188 (1973)). It is well-established that "[a] plaintiff who mounts a pre-enforcement challenge to a statute that he claims violates his freedom of speech need not show that the authorities have threatened to prosecute him; the threat is latent in the existence of the statute." *Majors v. Abell*, 317 F.3d 719, 721 (7th Cir. 2003) (internal citations omitted); *see also Ezell*, 2011 WL 2623511, at *7 ("The very existence of a statute implies a threat to prosecute, so pre-enforcement challenges are proper, because a probability of future injury counts as 'injury' for the purposes of standing.").

"[I]f [the ordinance] arguably covers" Bell's proposed future conduct—which it does here, since Bell has stated an intention to engage in nearly identical conduct for which there was probable cause to arrest him pursuant to Subsection (d) on January 7, 2008—he has standing. *See* A10; *Majors*, 317 F.3d at 721. This is not an isolated misapplication of the ordinance. The City enforced the ordinance against Bell by its terms. Subsection (d) "may deter constitutionally protected expression because most people are frightened of violating criminal statutes especially when the gains are slight, as they would be for people seeking only to make a political point ... ." *Id.* Where "the alleged danger of [a] statute is, in large measure, one of

self-censorship," this is "a harm that can be realized even without an actual prosecution." *Am. Booksellers Ass'n Inc.*, 484 U.S. at 393; *see also Sequoia Books, Inc. v. Ingemunson*, 901 F.2d 630, 634 (7th Cir. 1990) (holding that plaintiff had standing because "[t]o the extent the provisions require Sequoia and similarly situated businesses to exercise self-censorship, they are required to exercise self-censorship today.").

In fact, a credible threat of prosecution exists *unless* the government affirmatively indicates that it will not enforce the challenged law. "The Supreme Court has instructed us that a threat of prosecution is credible when a plaintiff's intended conduct runs afoul of a criminal statute and the Government fails to indicate affirmatively that it will *not* enforce the statute." *Commodity Trend Serv., Inc. v. Commodity Futures Trading Commission*, 149 F.3d 679, 687 (7th Cir. 1998) (citing *Am. Booksellers Ass'n, Inc.*, 484 U.S. at 393); *see also Babbitt*, 442 U.S. at 302 (holding that fear of prosecution was not speculative, even though the challenged criminal penalty provision had never been applied to plaintiffs' proposed conduct, where the statute on its face proscribed the proposed conduct and where "the State has not disavowed any intention of invoking the criminal penalty provision");[6] *Holder v. Humanitarian Law Project*, 130 S. Ct. 2705, 2717 (2010)

---

[6] The rule set forth in *Babbitt* is easily met. As one Circuit judge has observed, "[T]he Court held that a union had standing to challenge a law's constitutionality where it alleged that it *might* violate it, alleged 'an intention to continue' in activities that might violate it, and the state had not 'disavowed any intention' to prosecute, even though the penalty had *never* been applied to the kind of conduct at issue." *Thomas v. Anchorage Equal Rights Commission*, 220 F.3d 1134, 1149 (9th Cir. 2000) (Kleinfeld, J., dissenting). Here, Subsection (d) has already been applied to the conduct at issue, and even to the very same person's conduct.

18

(holding that plaintiffs had standing because "[t]he Government has not argued to this Court that plaintiffs will not be prosecuted if they do what they say they wish to do"); *Island Ass'n of Realtors, Inc. v. Whitehouse*, 199 F.3d 26, 31 (1st Cir. 1999) ("[W]hen dealing with pre-enforcement challenges to ... nonmoribund[] statutes that facially restrict expressive activity by the class to which the plaintiff belongs, courts will assume a credible threat of prosecution in the absence of compelling contrary evidence."); *Krantz v. City of Fort Smith*, 160 F.3d 1214, 1217 (8th Cir. 1998) ("We assume the City of Dyer would prosecute violators of its ordinance, given the opportunity, because it has vigorously defended the ordinance and has never suggested that it would refrain from enforcement."); *New Hampshire Right to Life Political Action Comm. v. Gardner*, 99 F.3d 8, 15 (1st Cir. 1996) ("[C]ourts will assume a credible threat of prosecution in the absence of compelling contrary evidence."); *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1502 (10th Cir. 1995) (credible threat of prosecution existed because state had "not affirmatively disavowed any intention of bringing criminal prosecution").

There is a credible threat of prosecution here because the City has never disavowed enforcement of Subsection (d). Instead, the City vigorously defended its enforcement of the ordinance in this case, both in the criminal proceeding it brought against Bell and in its defense against Bell's civil rights action in the district court. Since 2005, the City has arrested and prosecuted numerous other protestors under Subsection (d) of its disorderly conduct ordinance, and it has vigorously defended itself when sued in federal court on civil rights claims arising from those arrests.

19

*E.g.*, *Thayer v. Chiczewski*, No. 07 CV 1290, 2007 WL 3447931 (N.D. Ill. Nov. 13, 2007), and *Lyttle v. Killackey*, 546 F. Supp. 2d 583 (N.D. Ill. 2008) (arrest of protestors at anti-war protest on March 19, 2005); *see also Vogel v. Isakson*, No. 06 CV 165 (N.D. Illinois) (same), Dkt. No. 1; *Ritscher v. Angsten*, No. 06 CV 1888 (N.D. Illinois) (same), Dkt. No. 1; *Schirmer v. Nagode*, 621 F.3d at 583 (arrest of protestors in front of military recruiting booth at Taste of Chicago in July 2006); *Woo v. Nagode*, No. 07 CV 3818 (N.D. Illinois) (same), Dkt. No. 1. The City has never stated that any of these arrests were a mistake, beyond the scope of the ordinance, or an isolated misuse of the law.

Moreover, the City has argued that it is entitled to enforce Subsection (d) by its terms even when individuals are engaged in protected expression. Br. of Defendants-Appellees at 16, *Schirmer v. Nagode*, Appeal No. 09-2332, Dkt. No. 24. "[I]f the enforcing authority is defending the challenged law or rule in court, an intent to enforce the rule may be inferred." *Harrell v. Florida Bar*, 608 F.3d 1241, 1257 (11th Cir. 2010); *see also Teesdale v. City of Chicago*, __ F. Supp. 2d __, No. 09 CV 4046, 2011 WL 2143027, at *5 (N.D. Ill. May 26, 2011) (holding that the litigation position taken by the City's attorneys in the City's briefs reflect the City's official position, citing Chicago Municipal Code § 2-60-020(a)-(b)). As one court recently explained in holding that a panhandler had standing to seek injunctive relief against a policy against peaceful panhandling in Daley Plaza, "Any arrest or relocation of Plaintiff for panhandling on Daley Plaza would not be a 'misuse'— isolated or otherwise—of the alleged policy; rather, it would be the specific intended

use of the policy." *Pindak v. Dart*, No. 10 CV 6237, 2001 WL 4337017, at *4 (N.D. Ill. Sept. 14, 2011) (distinguishing *Schirmer*).[7]

The district court's holding that Bell's situation is indistinguishable from *Schirmer* is simply wrong. The plaintiffs in *Schirmer* lacked standing to mount a pre-enforcement challenge because they alleged only that they "'plan to continue their participation in constitutionally protected political activities and protests and … fear repeated disruption of these activities and protests and prosecution for them.'" *Schirmer*, 621 F.3d at 584. This meant that the plaintiffs intended to engage in the same speech activity that they had engaged in when they were arrested in 2006, and since that activity provided no basis for plaintiffs' arrest under Subsection (d), they had not sufficiently alleged an intention to engage in future conduct covered by the ordinance. Thus, the third element of standing, redressability, was missing "because the failure-to-disperse provision clearly did not apply to the plaintiffs' actions, actions that we assume they would like to repeat in the future but for their stated fear of prosecution." *Id.* at 585. As argued above, the failure-to-disperse provision clearly applies to Bell's past and intended future conduct, and therefore, a favorable decision would redress his injury.

---

[7] Even if the City were to claim now that it had no intention of prosecuting Plaintiff under circumstances like the one under which he was arrested on January 7, 2008, Plaintiff still has standing because, "[a]ll that remain[s] between the plaintiff and impending harm [i]s the defendant's discretionary decision—which could be changed—to withhold [enforcement]." *American Civil Liberties Union v. The Florida Bar*, 999 F.2d 1486, 1494-95 (11th Cir. 1993) (quoting *Hallandale Professional Fire Fighters Local 2238 v. City of Hallandale*, 922 F.2d 756, 762 (11th Cir. 1991)). As the Eleventh Circuit noted in that case, "it would be an anomalous result if [defendants] were permitted to (1) maintain that Canon 7(B)(1)(a) is constitutional and enforceable and yet, if Schack or another judicial candidate in Schack's position were to seek pre-enforcement review, to (2) again come into court saying 'Canon 7(B)(1)(a) does not apply to that proposed speech.' This process itself … is enough to chill speech." *Id.* at 1495.

21

## C.   The Threat Of Prosecution Is Credible Since Subsection (d) Is Vague And Ambiguous

Bell has standing to seek injunctive relief on vagueness (in addition to First Amendment) grounds because he "cannot be sure whether criminal sanctions may be visited upon [him] for pursuing any [conduct regulated by the law], much of which is allegedly constitutionally protected. ... If the provision were truly vague, [plaintiff] should not be expected to pursue [his] ... activities at [his] peril." *Babbitt*, 442 U.S. at 303; *see also Harrell*, 608 F.3d at 1254 ("It is the existence, not the imposition, of standardless requirements that causes [the] injury."); *Int'l Soc'y for Krishna Consciousness of Atlanta v. Eaves*, 601 F.2d 809, 822-23 (5th Cir. 1979) (holding that plaintiffs had standing because "vague measures regulating first amendment freedoms enable low-level administrative officials to act as censors, deciding for themselves which expressive activities to permit. The very existence of this censorial power, regardless of how or whether it is exercised, is unacceptable. ... [thus] ... , there is little reason to forbear entertaining an anticipatory challenge in order to allow that power to be exercised."). As argued below, Subsection (d) is void for vagueness because it fails to establish minimal guidelines to govern law enforcement and fails to provide adequate notice to ordinary citizens of what conduct is prohibited.

This Court's decision in *Hoover v. Wagner*, 47 F.3d 845 (7th Cir. 1995), is instructive. In *Hoover*, abortion protestors had standing to challenge a state court injunction against blocking access to or demonstrating within 25 feet of a clinic even though they had no intention to violate the injunction, but were simply deterred

from participating in lawful protests by a fear that the injunction would be misinterpreted as applying to them. *Id.* at 846-47. The plaintiffs alleged that they and others similarly situated to them were threatened with arrest, arrested, and prosecuted "for violation of the injunction when the only evidence of violation was that they were seen in the vicinity of abortion clinics that were being picketed by defendants named in the injunction." *Id.* at 847. Unlike Bell, they did not allege that there was any arguably valid basis for their past arrests. Yet, this Court held that those plaintiffs had standing because they "want[ed] to go right up to the line that separates legal from illegal protest," and

> [i]f that line is drawn in vague and wavering fashion by the state court injunction, or if the Milwaukee police and other law enforcement officers interpret the injunction in a way that subjects to arrest people who stop just short of the line, then either these plaintiffs will be arrested if they insist on going right up to the line, or they will draw well back from the line and as a result … forgo the full exercise of their constitutional rights.

*Id.*; *see also Penny Saver Publications v. Village of Hazel Crest*, 905 F.2d 150, 155 n.2 (7th Cir. 1990) ("The first amendment 'chill' and its consequential injury to Penny Saver also confers standing for an action based on a vagueness theory.").

This is precisely the situation Bell faces: he is foregoing the full exercise of his constitutional rights because the line between legal and illegal conduct under Subsection (d) is "vague and wavering," and the City has arrested protestors who stop short of the line (*Schirmer*) as well as those who have crossed the line. *See* A10. Thus, Bell has standing to seek injunctive relief on his vagueness challenge, which is independent of his standing to seek injunctive relief on his First Amendment challenge.

## II.    SUBSECTION (D) IS UNCONSTITUTIONALLY VAGUE

Subsection (d) is void for vagueness because it "reaches a substantial amount of constitutionally protected conduct," *Kolender*, 461 U.S. at 358 n.8 (internal quotation marks and citation omitted), and "vagueness permeates the text," *Morales*, 527 U.S. at 55. "Vagueness may invalidate a criminal law for either of two independent reasons. First, it may fail to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits; second, it may authorize and even encourage arbitrary and discriminatory enforcement." *Id.* at 56; *Kolender,* 461 U.S. at 357. Subsection (d) is unconstitutionally vague for both reasons.

### A.    Subsection (d) Encourages Arbitrary And Discriminatory Enforcement

Subsection (d) permits "a standardless sweep [that] allows policemen, … to pursue their personal predilections." *Kolender*, 461 U.S. at 358. Only the term "disorderly conduct" has been construed by the Illinois Supreme Court, which leaves citizens and police officers to guess at the meaning of terms in Subsection (d) such as "alarm," "annoyance," and "inconvenience." Furthermore, federal courts cannot adopt a limiting construction of a state statute unless it is "reasonable and readily apparent," *Boos v. Barry*, 485 U.S. 312, 330 (1988), and, in any event, the Illinois Supreme Court has not adopted any limiting construction of Subsection (d). "The Constitution does not permit a legislature to 'set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully detained, and who should be set at large,'" *Morales*, 527 U.S. at 60, but that is exactly what Subsection (d) does.

24

In *Coates v. Cincinnati*, 402 U.S. 611 (1971), a case on all fours with this one, the Supreme Court held that the term "annoying" is unconstitutionally vague. A statute that made it "unlawful for three or more persons to assemble … on any of the sidewalks, street corners, vacant lots, or mouths of alleys, and there conduct themselves in a manner annoying to persons passing by, or occupants of adjacent buildings" was "unconstitutionally vague because it subjects the exercise of the right of assembly to an unascertainable standard, and unconstitutionally broad because it authorizes the punishment of constitutionally protected conduct." *Id.* at 611 n.1, 614; *see also Holder*, 130 S. Ct. at 2720 ("We have in the past 'struck down statutes that tied criminal culpability to whether the defendant's conduct was 'annoying' … wholly subjective judgments without statutory definitions, narrowing context, or settled legal meanings.'"); *United States v. Williams*, 553 U.S. 285, 306 (2008) (same). Subsection (d) provides no objective standard by which to measure the annoying acts; it does not "indicate upon whose sensitivity a violation … depend[s]—the sensitivity of the judge or jury, the sensitivity of the arresting officer, or the sensitivity of a hypothetical reasonable man." *Coates*, 402 U.S. at 613.

Subsection (d) is even more vague than the statute struck down in *Coates* because (1) it adds the equally vague terms "inconvenience" and "alarm" to "annoyance" as disjunctive alternatives; (2) it requires only that conduct be "likely to cause," and not to actually have caused "annoyance," "inconvenience," or "alarm"; and (3) it does not require that the conduct of the defendant be annoying, alarming, or inconvenient, but only that the acts of unspecified others in the vicinity be, in the

25

subjective opinion of the enforcing police officer, "likely to cause" "serious

inconvenience, annoyance or alarm." As the Supreme Court instructed in *Coates*:

> Conduct that annoys some people does not annoy others. Thus, the ordinance
> is vague, not in the sense that it requires a person to conform his conduct to
> an imprecise but comprehensible normative standard, but rather in the sense
> that no standard is specified at all. … The city is free to prevent people from
> blocking sidewalks, obstructing traffic, littering streets, committing assaults,
> or engaging in countless other forms of antisocial conduct. … It cannot
> constitutionally do so through the enactment and enforcement of an
> ordinance whose violation may entirely depend on whether or not a
> policeman is annoyed.

402 U.S. at 614. And here, the policeman can make an arrest because he is annoyed

by someone else's conduct.

Moreover, "acts of disorderly conduct" is unconstitutionally vague. "[A]cts of

disorderly conduct" is defined as acting "in such unreasonable manner as to

provoke, make or aid in making a breach of the peace," *City of Chicago v. Fort*, 262

N.E.2d 473, 475 (Ill. 1970), but "breach of the peace" has been construed broadly by

the Illinois courts to mean "conduct which tends to cause public disorder or to

disturb the public peace and quiet," *City of Chicago v. Mateja*, 372 N.E.2d 1060,

1061-62 (Ill. App. Ct. 1978).[8] "[T]o make an offense of conduct which is calculated to

create disturbances of the peace leaves wide open the standard of responsibility …

---

[8] The kind of protected conduct encompassed by this standard is limitless because the
determination of whether conduct is likely to cause annoyance, alarm, or inconvenience is
subjective. For instance, it could include anti-abortion protestors holding graphic photos of
aborted fetuses or protestors picketing, chanting, or singing. Not only is the conduct of the
three or more persons committing the triggering acts constitutionally protected, but
onlookers—those that could be ordered to disperse under Subsection (d)—have a First
Amendment right to receive that message. *See Virginia State Bd. of Pharmacy v. Virginia
Citizens Consumer Council, Inc.*, 425 U.S. 748, 757 (1976). Conversely, in situations where
the speaker's message is causing a hostile audience reaction, the speaker has a
constitutionally protected right to continue speaking despite that reaction. *See, infra* III.C.

so that it is easily susceptible to improper application." *Gooding v. Wilson*, 405 U.S. 518, 527-28 (1972) (citing *Cox v. Louisiana*, 379 U.S. 536 (1965) (invalidating Georgia breach of peace statute on its face as unconstitutionally vague and overbroad)); *Cantwell v. Connecticut*, 310 U.S. 296, 308 (1940) (describing common law breach of the peace as an offense that "embraces a great variety of conduct destroying or menacing public order and tranquility" and "sweep[s] in a great variety of conduct under a general and indefinite characterization, and leaving to the executive and judicial branches too wide a discretion in its application."); *see also Edwards v. South Carolina*, 372 U.S. 229, 237-38 (1963) (reversing convictions for breach of the peace where the statute was "vague and indefinite"). "Breach of the peace" as defined by Illinois courts with respect to Subsection (d) is much vaguer and broader than other definitions of the term approved by this Court. *See Sroga v. Weiglen*, 649 F.3d 604, 606-07 (7th Cir. 2011).

In *Terminiello v. Chicago*, 337 U.S. 1 (1949), the Supreme Court reversed a conviction for disorderly conduct under an earlier version of Chicago's disorderly conduct ordinance on the ground that the ordinance "permitted conviction of petitioner if his speech stirred people to anger, invited public dispute, or brought about a condition of unrest." *Id.* at 5. Although the Court did not consider whether the ordinance was "defective in its entirety," *id.*, it did hold that "freedom of speech, though not absolute, is nevertheless protected against censorship or punishment, unless shown likely to produce a clear and present danger of serious substantive evil that rises far above public inconvenience, annoyance or unrest," *id.* at 4

27

(internal citations omitted); *see also Startzell v. City of Philadelphia*, 533 F.3d 183,

206-07 (3d Cir. 2008) (it would not be constitutionally permissible for police to

"silence protected speech based solely on their judgment that it is interfering with"

or "disrupting" "competing protected speech," and that a "'disruption' standard,"

"like the 'breach of the peace' standard in *Cantwell*, *Cox*, and *Terminiello*, provides

the enforcement authority with excessive discretion.") (Stapleton, J., concurring).

Subsection (d) is so vague that it "necessarily entrusts lawmaking to the

moment-to-moment judgment of the policeman on his beat." *Morales*, 527 U.S. at

60. It is like the gang loitering ordinance invalidated by the Supreme Court in

*Morales* in that the Illinois Supreme Court has given absolute discretion to police

officers to make "on-the-spot decision[s]" about what activities constitute disorderly

conduct under Subsection (d). *See id.* at 61; *Fort*, 262 N.E.2d at 476. Just as the "no

apparent purpose standard" for determining loitering in *Morales* was "inherently

subjective because its application depends on whether some purpose is 'apparent' to

the officer on the scene," *Morales*, 527 U.S. at 62, the "serious inconvenience,

annoyance or alarm" standard is inherently subjective because its application

depends on the sensibilities of the officer on the scene. "[T]hat the ordinance does

not permit an arrest until after a dispersal order has been disobeyed does not

provide any guidance to the officer deciding whether such an order should issue." *Id.*

In fact, Subsection (d) is more susceptible to arbitrary and discriminatory

enforcement than the gang loitering ordinance in *Morales*. The gang loitering

ordinance provided that an officer "shall order all such persons to disperse and

remove themselves from the area." *Id.* at 47 n.2. Once an officer decided to issue a dispersal order, he had to issue it to "all such persons" present. Subsection (d) does not cabin an officer's discretion in that way; it does not require an officer to order everyone in the vicinity of three or more persons who are committing acts of disorderly conduct to disperse. An officer can decide to order some individuals to disperse but not others, and there is nothing in the ordinance preventing him from exercising that discretion arbitrarily, discriminatorily, and in a way that suppresses First Amendment liberties. "Where inherently vague statutory language permits such selective law enforcement, there is a denial of due process." *Smith v. Goguen*, 415 U.S. 566, 576 (1974); *Morales*, 527 U.S. at 58-59 ("If the police are able to decide arbitrarily which members of the public they will order to disperse, then the Chicago ordinance becomes indistinguishable from the law we held invalid in *Shuttlesworth v. Birmingham*, 382 U.S. 87, 90 (1965).").

Thus, the factors provided in Subsection (d) for an officer to consider in determining whether to issue an order to disperse are undefined, subjective, and entirely left to the limitless discretion of the officer. *See Coates*, 402 U.S. at 615-16. Subsection (d) is so vague that it encourages arbitrary and discriminatory enforcement.

## B.    Subsection (d) Does Not Provide Fair Notice

Subsection (d) is also unconstitutionally vague in that it does not provide adequate notice of what conduct is prohibited. *Morales* held:

> Although it is true that a loiterer is not subject to criminal sanctions unless he or she disobeys a dispersal order, the loitering is the conduct that the

29

ordinance is designed to prohibit. If the loitering is in fact harmless and innocent, the dispersal order itself is an unjustified impairment of liberty. … Because an officer may issue an order only after prohibited conduct has already occurred, it cannot provide the kind of advance notice that will protect the putative loiterer from being ordered to disperse.

527 U.S. at 58-59. Similarly, being in the immediate vicinity of three or more persons committing acts of disorderly conduct likely to cause serious inconvenience, annoyance, or alarm is the conduct that Subsection (d) is designed to prohibit. If one's mere presence is innocent and harmless, then "the dispersal order itself is an unjustified impairment of liberty." *Id.* at 58. Because an officer may give a dispersal order only after the prohibited conduct has occurred, and what constitutes prohibited conduct is completely subjective, Subsection (d) cannot provide adequate notice. *Id.* at 59.

Besides the fact that the definition of "breach of peace" is impermissibly broad, the problem with the phrase "acts of disorderly conduct" in Subsection (d) is that it does not refer to the acts of the person ordered to disperse but the acts of others. Thus, Subsection (d) requires a person to knowingly fail to obey a *lawful* order of dispersal, which, in turn, requires the person ordered to disperse to determine whether the police officer ordering dispersal believes that other persons' acts of disorderly conduct are "likely to cause" "serious inconvenience, annoyance or alarm." Such a requirement is obviously untenable.

Finally, Subsection (d) is nothing like the ordinance upheld in *Colten v. Kentucky*, 407 U.S. 104 (1972), relied on by the City in the district court. The disorderly conduct statute at issue in *Colten* contained two requirements not

present in Subsection (d): (1) that the defendant possess the "intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof," and (2) that the defendant himself "[c]ongregate[] with other persons in a public place." *Id.* at 108. By contrast, Subsection (d) allows the dispersal of individuals who themselves have no connection to or intent to cause any public inconvenience, annoyance, or alarm, and it requires no connection between the defendant who is ordered to disperse and the three or more persons whose acts are likely to cause annoyance or alarm.

Significantly, the state court had interpreted the statute in *Colten* to exclude those whose intent was to exercise a constitutional right:

> [A] crime is committed only where there is no bona fide intention to exercise a constitutional right—in which event, by definition, the statute infringes no protected speech or conduct—or where the interest so clearly outweighs the collective interest sought to be asserted that the latter must be deemed insubstantial. … Individuals may not be convicted under the Kentucky statute merely for expressing unpopular or annoying ideas.

*Id.* at 111. Thus, the statute did not sweep within its reach those who engage in First Amendment-protected activity, and the Supreme Court upheld Colten's conviction because he was not engaged in any such activity. *Id.* at 109. Unlike the statute in *Colten*, Subsection (d) allows the dispersal of individuals whose bona fide intent is to exercise a constitutional right rather than to cause public inconvenience, annoyance, or alarm.

### III.   SUBSECTION (D) IS OVERBROAD AND FACIALLY UNCONSTITUTIONAL UNDER THE FIRST AMENDMENT

Bell can prevail in his facial challenge if he shows that (1) "any attempt to enforce [the law] would create an unacceptable risk of the suppression of ideas" or (2) there is "a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court." *Members of the City Council of the City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 797, 801 (1984); *see Hodgkins by Hodgkins v. Peterson*, 355 F.3d 1048, 1056-57 (7th Cir. 2004). Bell makes both showings.

#### A.   Subsection (d) Is Overbroad

Subsection (d) is overbroad because there is an unacceptable risk of suppression of ideas and a realistic danger that it will significantly compromise recognized First Amendment protections of parties not before the Court. *See Morales*, 527 U.S. at 52; *see also Joseph H. Munson, Co.*, 467 U.S. at 963 n.13. The only conduct required of a person in order to be arrested is the knowing failure to obey a lawful order to disperse. Subsection (d) does not require any causal nexus between those ordered to disperse and those committing the triggering acts of disorderly conduct, and the person ordered to disperse could be engaged in entirely innocent conduct. Like the ordinance struck down in *Shuttlesworth*, 382 U.S. at 90, "[l]iterally read … this ordinance says that a person may stand on a public sidewalk in [Chicago] only at the whim of any police officer of that city. The constitutional vice of so broad a provision needs no demonstration."

32

Subsection (d) does not merely regulate protected speech at its margins, but it "lends itself to a substantial number of impermissible applications, such that it is capable of deterring protected conduct." *United States v. Dellinger*, 472 F.2d 340, 357 (7th Cir. 1972); *see also Wiegand v. Seaver*, 504 F.2d 303, 307 (5th Cir. 1974) (holding that breach of the peace statute is unconstitutionally overbroad because it "broadly encompasses both protected and unprotected speech within its range of prohibitions" and "no sufficiently narrow construction has been placed on the statute to resolve these constitutional difficulties").

"[V]ague statutes may unnecessarily inhibit the exercise of first amendment freedoms, because uncertain meanings will lead citizens to 'steer far wider of the unlawful zone than if the boundaries of the forbidden areas were clearly marked.'" *Waldron v. McAtee*, 723 F.2d 1348, 1358 (7th Cir. 1983) (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 109 (1972)). Subsection (d)'s vagueness presents "the risk of improper application," which "leads persons to withdraw from the borderland." *Thomas v. Chicago Park Dist.*, 227 F.3d 921, 923 (7th Cir. 2000). Not only would this chill the activity of persons who wish to listen to controversial speech (because they could be in the audience and subject to arrest depending on the reaction of bystanders), but it would chill the activity of persons who wish to give controversial speeches. "[L]ike the proverbial sword of Damocles," the "risk of criminal sanction" hovers over anyone engaged in boisterous public assembly or controversial public speech. *Reno v. American Civil Liberties Union*, 521 U.S. 844, 882 (1997). "The concrete possibility of arrest … makes clear that the statute unduly chills the

33

exercise of a [person's] First Amendment rights." *Hodgkins*, 355 F.3d at 1064; *see also Thornhill v. Alabama*, 310 U.S. 88, 97 (1940).

On the question whether Subsection (d) is overbroad, *Hodgkins* is illustrative. In *Hodgkins*, parents and their minor children brought a facial challenge on First Amendment and due process grounds to the constitutionality of Indiana's nighttime juvenile curfew law. 355 F.3d at 1051. The curfew law prohibited juveniles from being in a public place during certain hours of the evening. The law provided certain affirmative defenses, including one for those engaged in protected expressive activity. *Id.* at 1053. This Court recognized that the intermediate scrutiny tests of *Ward* and *O'Brien* "can be applied only to governmental regulation of conduct that has an expressive element or to regulations directed at activity with no expressive component but which nevertheless impose a disproportionate burden on those engaged in protected First Amendment activity." *Id.* at 1057. This Court held that the curfew law's "relationship to expressive conduct is intimate and profound" because "[b]eing out in public is a necessary precursor to almost all public forums for speech, expression, and political activity." *Id.* at 1058-59. Thus, the curfew law was overbroad and subjected to intermediate scrutiny.

Likewise, the City's regulation of nonspeech in Subsection (d) (being in the immediate vicinity of other persons committing acts of disorderly conduct) is intimately related to the expressive conduct at issue—being out in public with others. First, as discussed above, "acts of disorderly conduct," as interpreted by the

Illinois courts, is not limited to conduct that the City may legitimately prohibit. *See Taxpayers for Vincent*, 466 U.S. at 798 n.14 (noting that where "no attempt is made to tailor a statute "to a substantive evil unrelated to the suppression of ideas, the statute create[s] an unacceptable risk that it would be used to suppress. Under such statutes, any enforcement carries with it the risk that the enforcement is being used merely to suppress speech, since the statute is not aimed at a substantive evil within the power of the government to prohibit."). Second, Subsection (d) regulates the ability of speakers to be in public and express themselves in a manner that might draw a crowd or cause negative reaction from others. Third, Subsection (d) regulates the ability of listeners to be in the vicinity of and receive messages from speakers (who might themselves be raucous or otherwise causing a crowd to gather). Although there might be some people in the vicinity of others committing disorderly conduct who are not engaged in or receiving speech, the conduct regulated by Subsection (d), like the curfew law in *Hodgkins*, is nevertheless intimately connected to First Amendment-protected activity. Thus, it is overbroad and intermediate scrutiny applies.

## B.    The City Has Not Met Its Burden Of Showing That Subsection (d) Passes Intermediate Scrutiny

"When a statute infringes on the exercise of First Amendment rights, the burden of establishing its constitutionality is on its proponent. Therefore, the City bears the burden of showing that the Ordinance is properly drawn." *Wisconsin Action Coalition v. City of Kenosha*, 767 F.2d 1248, 1252 (7th Cir. 1985) (internal citations omitted); *Heffron v. Int'l Soc'y for Krishna Consciousness, Inc.*, 452 U.S.

35

640, 658 (1981) ("Once a governmental regulation is shown to impinge on basic First Amendment rights, the burden falls on the government to show the validity of its asserted interests and the absence of less intrusive alternatives."); *Horina v. Granite City*, 538 F.3d 624, 633 (7th Cir. 2008) ("'the government has the burden of showing that there is evidence supporting its proffered justification' for its speech restriction when asserting that the restriction survives the time, place, and manner analysis") (quoting *Weinberg v. City of Chicago*, 310 F.3d 1029, 1038 (7th Cir. 2002)). In addition, "[w]hen regulating First Amendment activity in a public forum the government has a difficult burden to carry." *Weinberg*, 310 F.3d at 1035. The City has not met its heavy burden here.

### 1.  Subsection (d) is not narrowly tailored

The City "may serve its legitimate interests, but it must do so by narrowly drawn regulations designed to serve those interests without unnecessarily interfering with First Amendment freedoms." *Village of Schaumburg v. Citizens for a Better Environment*, 444 U.S. 620, 637 (1980). "Whether an enactment is narrowly tailored really involves two separate inquiries. First, there must be a significant relationship between the ordinance and the governmental interest. Second, less restrictive alternatives must be inadequate to protect the governmental interest." *Berg v. Health and Hosp. Corp. of Marion County, Ind.*, 865 F.2d 797, 803 (7th Cir. 1989) (citations omitted); *see also Wisconsin Action Coalition*, 767 F.2d at 1253 ("If the interest asserted 'can be accommodated by measures less intrusive'

than the challenged regulation, the regulation is insufficiently related to the interest to justify its interference with the protected speech.") (citations omitted).

The City's stated interest in Subsection (d) is that it enables the City "to protect the safety and convenience of persons using public streets and forums." R. 118 at 4. Bell does not dispute that, in general, this is a legitimate governmental interest, but the reach of Subsection (d) is not limited to situations in which public safety is in jeopardy. The City needs to prove that an interest in protecting public safety requires an ordinance that bans mere presence when others are in the vicinity committing acts that may be annoying.

The City cannot make this showing because "a substantial portion of the burden on speech does not serve to advance its goals." *Hodgkins*, 355 F.3d at 1060. There is no reason the ordinance must reach as broadly as it does in order to promote the City's interest. The ordinance is triggered whenever the public peace and quiet is disturbed in an annoying, alarming, or seriously inconvenient way, *see Mateja*, 372 N.E.2d at 1061-62, and this conduct can be anything that is contrary to the sensibilities of whoever happens to be standing nearby. For instance, a group of anti-abortion activists on a sidewalk holding up graphic pictures of aborted fetuses could certainly be "alarming" and "tend to cause public disorder." Labor protestors chanting and picketing in front of a hotel on Michigan Avenue could "disturb public peace and quiet" and be "likely to cause" "serious inconvenience." Nothing in these scenarios threatens public safety. In fact, Subsection (d) is triggered even when the only people disturbed or annoyed are the police officers ordering dispersal. Yet,

"because the First Amendment requires that police officers tolerate coarse criticism, the Constitution prohibits states from criminalizing conduct that disturbs solely police officers." *Kennedy v. City of Villa Hills, Ky.*, 635 F.3d 210, 216 (6th Cir. 2011) (citing *Houston v. Hill*, 482 U.S. 451, 461-63 (1987)).

If the City wants to protect public safety, it could do so through an ordinance that includes elements such as whoever disobeyed the order "created or enhanced public danger" or "endangered public safety" or even "whose dispersal was necessary to maintain public safety." If the City wants to protect the convenience of persons using public streets, it could do so through an ordinance that prohibits people from impeding or obstructing the public way. Subsection (d) contains no such elements. As the Supreme Court explained in *Schneider v. State*, 308 U.S. 147, 163 (1939), "[t]here are obvious methods of preventing littering. Amongst these is the punishment of those who actually throw papers on the streets." Here, too, the obvious method of protecting public safety is to punish those who actually endanger it.[9]

Thus, the City can achieve its interest through less restrictive means than Subsection (d). *Berg*, 865 F.2d at 804 ("[T]o be narrowly tailored there … must be no less restrictive alternative which could serve the governmental interest.") (citation omitted); *Hodgkins*, 355 F.3d at 1059 ("the incidental restriction on alleged First Amendment freedoms must be no greater than is essential to the furtherance of that interest."). Subsection (d) "burden[s] substantially more speech than is

---

[9] To the extent the City's interest is in preserving "public order," that is not a legitimate governmental interest, and its meaning is entirely vague. *See Gooding*, 405 U.S. at 527-28; *Terminiello*, 337 U.S. at 4.

38

necessary to further the government's legitimate interest." *Kolender*, 491 U.S. at 799; *Weinberg*, 310 F.3d at 1040; *see Schad v. Borough of Mount Ephraim*, 452 U.S. 61, 70 (1981) ("Broad prophylactic rules in the area of free expression are suspect. Precision of regulation must be the touchstone … .") (internal quotation marks and citation omitted).

The City has not proffered any evidence showing that Subsection (d) "actually serves a government interest," and this Court "ha[s] struck down time, place, and manner restrictions where the government failed to produce 'objective evidence' showing that the restrictions served the interests asserted." *Horina*, 538 F.3d at 633-34 (citations omitted) (affirming district court's invalidation of anti-handbill ordinance and stating that Granite City had proffered no evidence showing that the ordinance was justified). "[T]he City cannot blindly invoke safety and congestion concerns without more." *Weinberg*, 310 F.3d at 1038. Subsection (d) is "a speech restrictive blanket with little or no factual justification," which "flies in the face of preserving one of our most cherished rights." *Id.* at 1039.

## 2. Subsection (d) does not provide ample alternative channels of communication

Even if this Court believes that the City has demonstrated narrow tailoring, the City has not met its burden of demonstrating that ample alternative channels of communication exist. *See Wisconsin Action Coalition*, 767 F.2d at 1256 (burden is on the government to show ample alternative methods of communication and that the alternatives are "ample and adequate").

"[W]hether an alternative is ample should be considered from the speaker's point of view," *Weinberg*, 310 F.3d at 1041, and from that point of view, the alternatives are not ample. In *Weinberg*, this Court invalidated an ordinance prohibiting peddling within 1,000 feet of the United Center because it did not afford plaintiff ample alternative channels of communication, since plaintiff was "attempting to disseminate a message critical of the owner of the Chicago Blackhawks … [and t]he most opportune time and place to reach this audience is outside the United Center, before and after Blackhawks home games." *Id.* at 1042. Under Subsection (d), a person ordered to disperse could be speaking to a gathered crowd, and making him go elsewhere until the crowd is dispersed would deprive him of his audience. *Schneider*, 308 U.S. at 163 ("[O]ne is not to have the exercise of his liberty of expression in appropriate places abridged on the plea that it may be exercised in some other place"); *Ezell*, 2011 WL 2623511, at *8 (same); *Weinberg*, 310 F.3d at 1041 ("[T]he simple fact that Weinberg is permitted to communicate his message elsewhere does not end our analysis if the intended message is rendered useless or seriously burdened."). Thus, Subsection (d) "'foreclose[s] a speaker's ability to reach one audience even if it allows the speaker to reach other groups.'" *Weinberg*, 310 F.3d at 1041.

Likewise, a person in an audience listening to others speaking would be deprived of his right to receive speech. *See Virginia State Bd. of Pharmacy*, 425 U.S. at 757. For these reasons, Subsection (d) is not narrowly tailored to serve a

40

legitimate governmental interest and fails to provide ample alternative channels of communication.

### C.    Subsection (d) Permits A Heckler's Veto

Subsection (d) also permits a heckler's veto, and therefore violates the First Amendment, because it is defined so broadly as to allow conviction if a defendant's "speech 'stirred people to anger, invited public dispute, or brought about a condition of unrest.'" *Edwards*, 372 U.S. at 238 (quoting *Terminiello*, 337 U.S. at 5); *see also Hedges v. Wauconda Cmty. Unit Sch. Dist. No. 118,* 9 F.3d 1295, 1299 (7th Cir. 1993) ("[T]he police are supposed to preserve order, which unpopular speech may endanger. Does it follow that the police may silence the rabble-rousing speaker? Not at all. The police must permit the speech and control the crowd; there is no heckler's veto.").

Although content-neutral on its face, Subsection (d) by its very terms includes a "heckler's veto" in allowing the actions of three or more persons unconnected to the speaker to disrupt protected First Amendment activities. By contrast, under Subsection (d), a person can be arrested without having violated the public order, disturbed the peace, incited anyone to violence, or committed any act that tends to disturb the peace. As long as there are three or more other persons in the immediate vicinity who are disturbing the public peace and quiet in a manner likely to cause serious inconvenience, annoyance, or alarm, he can be arrested. One's speech (and conduct) could be entirely peaceful, but if it provokes or stirs the audience, one can be arrested. "Listeners' reaction to speech is not a content-neutral

basis for regulation." *Forsyth Co. v. Nationalist Movement*, 505 U.S. 123, 134

(1992). As this Court observed in *Schirmer*, Subsection (d):

> lends itself to overly broad application that can interfere with core First
> Amendment rights of free speech an assembly. The 'three or more persons …
> committing acts of disorderly conduct' could be reacting to (or even
> attempting to disrupt) the speech of the person arrested for a failure to
> disperse, so this provision can be applied to impose what amounts to an
> unconstitutional 'heckler's veto' of protected speech.

621 F.3d at 583 (citing *Forsyth*, 505 U.S. at 134).

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be reversed, and this Court should remand with instructions to enter a permanent injunction barring the City of Chicago from enforcing Chicago Municipal Code § 8-4-010(d).

Respectfully submitted,

/s/ Elizabeth Wang
Elizabeth Wang
Counsel for Plaintiff-Appellant

Arthur Loevy
Jon Loevy
Elizabeth Wang – Counsel of Record
LOEVY & LOEVY
312 N. May St., Suite 100
Chicago, IL 60607
312.243.5900

Melinda Power
Sandeep Basran
West Town Law Office
2502 W. Division Ave.
Chicago, IL 60622
773.278.6706

## TABLE OF CONTENTS TO CIRCUIT RULE 30(a) APPENDIX

Minute entry on motion for declaration and permanent
injunction, entered June 2, 2011 (R123) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A1

Memorandum opinion and order denying motion for declaration
and permanent injunction, entered June 2, 2011 (R124) . . . . . . . . . . . . . . . . . . . A2

Signed verdict form, filed December 9, 2010 (R90) . . . . . . . . . . . . . . . . . . . . . . . A5

Judgment on jury verdict, filed December 9, 2010 (R92) . . . . . . . . . . . . . . . . . . . A9

Affidavit of Buddy Bell, filed February 22, 2011 (R117) . . . . . . . . . . . . . . . . . . . A10

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 09 C 754 | **DATE** | 6/2/2011 |
| **CASE TITLE** | Buddy Bell vs. Chicago Police Deputy Chief James Keating | | |

**DOCKET ENTRY TEXT**

Status hearing and ruling on motion hearing held. For the reasons stated in the attached memorandum opinion and order, Bell's motion for resolution of counts II and IV of Bell's complaint is dismissed, and Bell's request for a declaration and a permanent injunction is denied [114]. Enter Memorandum Opinion and Order.

■ [ For further detail see separate order(s).]                                         Docketing to mail notices.

00:10

| | | Courtroom Deputy Initials: | MF |
|---|---|---|---|

A1

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BUDDY BELL,                          )
                                     )
            Plaintiff,               )
                                     )
      v.                             )
                                     )   Case No. 09-cv-754
CHICAGO POLICE DEPUTY CHIEF          )
JAMES KEATING et al.,                )   Judge John W. Darrah
                                     )
            Defendants.              )
                                     )
                                     )
                                     )
                                     )
                                     )

**MEMORANDUM OPINION AND ORDER**

On February 5, 2009, Plaintiff, Buddy Bell ("Bell"), filed suit against Defendants,

Chicago Police Deputy Chief James Keating, Chicago Police Officers Carlos Mota and

Patrick Murray, and the City of Chicago (collectively, "Defendants"), alleging, among

other claims, violations of his Fourth and Fourteenth Amendment rights pursuant to

42 U.S.C. § 1983. Count I (False Detention, Arrest, and Imprisonment under

42 U.S.C. § 1983) and Count VI (Malicious Prosecution) were tried before a jury;

whereas, Count II and IV were reserved for the Court's ruling. On December 9, 2010,

the jury returned a verdict in favor of Defendants on Counts I and VI. Before the Court is

Bell's Motion for Resolution of Counts II and IV of Bell's Complaint. In Count II, Bell

seeks a declaration that the Municipal Code of Chicago ("MCC") 8-4-010(d), the City of

Chicago's disorderly conduct ordinance, is unconstitutional. In Count IV, Bell seeks a

declaration that MCC 8-4-010(d) is impermissibly vague, and because of its vagueness,

violates the Due Process Clause of the Fourteenth Amendment. Bell requests that the

Court enter a permanent injunction enjoining the enforcement of MCC § 8-4-010(d).

A2

Before the merits of Bell's Motion may be considered, the issue of whether Bell

has standing to request injunctive relief barring the enforcement of MCC § 8-4-010(d)

must be addressed.   Defendants do not contest that Bell has standing to bring a facial

challenge to MCC § 8-4-010(d) but argue that he lacks standing to pursue a claim for

injunctive relief based on his speculative fear of future arrest.  The Seventh Circuit's

recent decision in *Shirmer v. Nagode*, 612 F.3d 581 (7th Cir. 2010) (en banc) (*Shirmer*) is

particularly relevant as it also involved MCC § 8-4-010(d).  There, the Court of Appeals

held that a court "may not consider the facial validity of [MCC § 8-4-010(d)] unless

plaintiff[] had standing to request the injunctive relief." *Shirmer*, 612 F.3d at 584.

To establish standing, Bell must show that:  (1) he is under threat of an actual and

imminent injury in fact; (2) there is a causal relation between that injury in fact; and (3) it

is likely, rather than speculative or hypothetical, that a favorable judicial decision will

prevent or redress that injury. *Summers v. Earth Island Institute*, -- U.S. ---, ---,

129 S. Ct. 1142, 1149 (2009).  Here, Bell has not satisfied the third requirement, the

likelihood that the injunction will actually prevent injury that Bell reasonably fears he

will suffer. *Shirmer*, 621 F.3d at 585.  That Bell was previously prosecuted for violating

MCC § 8-4-010(d) "is insufficient by itself to establish [Bell's] standing to request

injunctive relief." *Id.*

The relevant question here is whether Bell has "sufficient reason to fear [an]

arrest and prosecution as to justify a federal judicial decision on the facial validity" of

MCC § 8-4-010(d).  Bell argues he is committed to participating in future demonstrations

and other expressions protected by the First Amendment.  (Br. at 4.)  Bell notes that he

has attended fewer demonstrations because he fears he might be arrested and charged

2

A3

with a violation of MCC § 8-4-010(d). But Bell has not established that he has a sufficient fear of being arrested for violating MCC § 8-4-010(d). In *Shirmer*, the Court of Appeals considered circumstances similar to those that Bell raises here. The Court of Appeals "assume[d] that plaintiffs intend . . . to continue to participate in demonstrations and other expressions protected by the First Amendment . . . [and] that they may be worried about a possible repeat of the events of the 2006 Taste of Chicago Festival." 621 F.3d at 585. The Court of Appeals further recognized that "the failure-to-disperse provision can be misused to impose a heckler's veto or otherwise to suppress speech and expressive conduct protected by the First Amendment." *Id*. But even so, the Court of Appeals held that the plaintiffs did not have standing as to justify a federal judicial decision on the facial validity of MCC § 8-4-010(d). *Id*. The circumstances of this case are not distinguishable. Bell has not demonstrated "more than a wholly speculative possibility of criminal consequences." *Id*. at 586. Therefore, the Court "does not address [MCC § 8-4-010(d)'s] constitutionality because [Bell] lacks standing to challenge its facial validity." *Id*. at 583.

## CONCLUSION

Bell's Motion for Resolution of Counts II and IV of Bell's Complaint is dismissed, and Bell's request for a declaration and a permanent injunction barring the enforcement of MCC § 8-4-010(d) is denied.

Date: June 2, 2011

JOHN W. DARRAH
United States District Court Judge

3

A4

09 C 754
Bell v. Keating
Verdict Form
12/9/10
Judge Darrah



## **VERDICT FORM**

We, the jury, find with respect to the claims of plaintiff as follows:

(Place an "X" on the appropriate line for each defendant and each count.)

### (1) **False Arrest Claim**

|  | For Plaintiff | Against Plaintiff |
|---|---|---|
| As to: | | |
| Defendant James Keating | _____ | ___X___ |
| Defendant Carlos Mota | _____ | ___X___ |
| Defendant Patrick Murray | _____ | ___X___ |

### (2) **Malicious Prosecution Claim**

|  | For Plaintiff | Against Plaintiff |
|---|---|---|
| As to: | | |
| Defendant James Keating | _____ | ___X___ |
| Defendant Carlos Mota | _____ | ___X___ |
| Defendant Patrick Murray | _____ | ___X___ |

A5

## DAMAGES

### A. COMPENSATORY DAMAGES

If you have found for Plaintiff and against any Defendant as to one or all of Plaintiff's claims on this verdict form, fill in the amount of compensatory damages that Plaintiff is awarded as to the claims:

Plaintiff, Buddy Bell, is awarded $ ___⊖___ in compensatory damages.

### B. PUNITIVE DAMAGES

Do you award Plaintiff Buddy Bell punitive damages and, if so, in what amount? (As to each Defendant, either (1) place an "X" on the NO line or (2) place an "X" on the YES line and fill in the amount.)

As to:

Defendant James Keating     NO     ___X___

                            YES    _____     $ _____

Defendant Carlos Mota        NO     ___X___

                            YES    _____     $ _____

Defendant Patrick Murray     NO     ___X___

                            YES    _____     $ _____

(1) Did Deputy Chief Keating and Officers Murray and Mota have probable cause to arrest Plaintiff Buddy Bell for disorderly conduct under an ordinance of the City of Chicago?

YES ___X___

NO _____

(2) Did Deputy Chief Keating and Officers Murray and Mota have probable cause to arrest Plaintiff Buddy Bell for disorderly conduct under Illinois law?

YES _____

NO ___X___

(3) Did Deputy Chief Keating and Officers Murray and Mota have probable cause to arrest Plaintiff Buddy Bell for obstructing a peace officer under Illinois law?

YES _____

NO ___X___

A7

Please sign and date this verdict form below:

_____          Mohammad Shafi Malik
Foreperson

D. Fr_____          Maria G. Flores

Erin J. Emm_____          Sandra E Vazquez

Marian V. Kastig                          _____

                    Dated:     12/9/2010

39                                    A8

# UNITED STATES DISTRICT COURT

for the

Northern District of Illinois, Eastern Division

| | | |
|---|---|---|
| Buddy Bell | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.    09 C 754 |
| James Keating, et. al. | ) | |
| *Defendant* | ) | |

## JUDGMENT IN A CIVIL ACTION

The court has ordered that *(check one)*:

❏  the plaintiff *(name)* _____ recover from the defendant *(name)* _____ the amount of _____ dollars ($ _____ ), which includes prejudgment interest at the rate of _____ %, plus postjudgment interest at the rate of _____ %, along with costs.

❏  the plaintiff recover nothing, the action be dismissed on the merits, and the defendant *(name)* _____ recover costs from the plaintiff *(name)* _____ .

❏  other:

This action was *(check one)*:

X   tried by a jury with Judge          Darrah                          presiding, and the jury has rendered a verdict.

❏  tried by Judge _____ without a jury and the above decision was reached.

❏  decided by Judge _____ on a motion for

Date:   12/9/10                                    Michael W. Dobbins, Clerk of Court

s/Melanie A. Foster
Melanie A. Foster, Deputy Clerk

A9

**A F F I D A V I T**
**OF BUDDY BELL**

I, Buddy Bell, do hereby state and declare the following to be true and accurate:

1. I am the Plaintiff in the case of Buddy Bell v. James Keating et al, 09 CV 0754.

2. Deputy Chief James Keating and Chicago police officers Carolos Mota and Patrick Murray arrested me while I was legally demonstrating in downtown Chicago on January 7, 2008.

3. Because of that arrest, which I feel was made without probable cause, I now am concerned that if I demonstrate in public places in downtown Chicago, I may get arrested again for no legal reason.

4. I am a person who is motivated by many social justice issues, including stopping the wars in Iraq and Afghanistan, supporting immigrant rights and support gay rights. I feel that one way to effect change in this country and in the city of Chicago is to publicly demonstrate my opposition to policies or practices with which I disagree.

5. I believe that I have the right to demonstrate in Chicago. However, since my arrest, I have been concerned that if I go to a public demonstration, the Chicago police may arrest me even though I haven't been doing anything illegal.

6. I also know that since the mass arrests on March 20, 2003 by the Chicago police department of anti-war protestors, the City of Chicago has been using the municipal ordinance charge of disorderly conduct to arrest protestors. For example, in March 2005, Pat Vogel was arrested at an anti-war demonstration and charged with municipal disorderly conduct. On July 2, 2006, Melissa Woo, Don Goldhamer, Robin Shirmer, Crystal Wilson, Megan Gallagher and Alberto Guevara were arrested at a protest in Grant Park and charged with municipal disorderly conduct. When I was arrested on January 7, 2008, I was charged, along with Kevin Clark and Jeffrey Pickert, with municipal disorderly conduct.

7. Although all of the above people except for Jeffrey Pickert were either found not guilty after a trial or had their charges dismissed, the possibility of the charge persists as a tool to intimidate me.

8. It is a vague charge that can be and has been misused by the Chicago police to arrest people with whom they disagree.

*Buddy Bell*

**Buddy Bell**

Sworn and Subscribed to Before me this

*17* of February 2011

*Melinda Longford Power*

**Notary Public**

OFFICIAL SEAL
MELINDA LONGFORD POWER
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:04/09/13

A10

**CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(a)(7)(B)(i)**

In accordance with Fed. R. App. P. 32(a)(7)(C)(i), I certify that the Brief of Plaintiff-Appellant complies with the type-volume limitation set forth in Fed. R. App. P. 32(a)(7)(B)(i) because it contains 10,488 words, beginning with the words "JURISDICTIONAL STATEMENT" and ending with the words "Respectfully submitted." In preparing this certificate, I relied on the word count of the word processing system used to prepare the brief, which was Microsoft Word 2007.

/s/ Elizabeth Wang
Counsel for Plaintiff-Appellant

**CERTIFICATE OF COMPLIANCE WITH CIR. R. 30(a) AND (b)**

In accordance with Cir. R. 30(d), I certify that all documents required under Cir. R. 30(a) and (b) are included in the Circuit Rule 30(a) Appendix of Plaintiff-Appellant.

/s/ Elizabeth Wang
Counsel for Plaintiff-Appellant

## CERTIFICATE OF SERVICE

I hereby certify that I served the Brief of Plaintiff-Appellant on October 7,

2011 via the CM/ECF filing system on counsel of record for Defendants-Appellees,

listed below.


/s/ Elizabeth Wang
Counsel for Plaintiff-Appellant

Persons served:
Christopher Norborg
City of Chicago Department of Law
30 N. LaSalle St., Suite 800
Chicago, IL 60602
christopher.norborg@cityofchicago.org